UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
HAYAT JOHN MASUDI, *pro se*,

                Plaintiff,

        -against-

BRADY CARGO SERVICES, INC., a
New York Corporation, RONALD A.
BRADY, Corporation Counsel of
Brady Cargo Services, Inc., in his
capacity as Corporation Counsel, and
Individually, AIR TRANSAT CARGO
INC., a Canada Corporation, and
DOES 1-5,

                Defendants.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**
12-CV-2391 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* Plaintiff Hayat John Masudi ("Plaintiff")[1] filed the instant action in the Supreme Court of the State of New York, Queens County, against Defendants Brady Cargo Services, Inc. and Ronald A. Brady (collectively, the "Brady Defendants"), and Air Transat A.T. Inc.[2] ("Air Transat"). (*See* Notice of Removal ("Not."), Dkt. Entry No. 1.) Plaintiff alleged claims for breach of contract, violation of Article 7 of the Unified Commercial Code, unjust enrichment, conversion, intentional and negligent misrepresentation, and fraudulent misrepresentation and inducement, stemming from a shipping contract. (*See* First Amended Complaint ("Cmpl.") ¶¶

---

[1] *Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). Courts should "interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (citation and internal quotation marks omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases there is a "greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F. 3d 917, 922 (2d Cir. 1998) (citation omitted).

[2] Air Transat was "incorrectly sued as 'Air Transat Cargo Inc.'" (Air Transat Mem. at 1.)

37-65, Dkt. Entry No. 1.)  With the consent of the Brady Defendants, Air Transat removed the case to this Court pursuant to 28 U.S.C. § 1331.  (Not. at 2.)

The Brady Defendants and Air Transat (collectively, "Defendants") now move for summary judgment.  (*See* Brady Defendants' Mem. of Law in Supp. of Mot. for Summ. J. ("Brady Mem."), Dkt. Entry No. 39; Mem. of Law in Supp. of Air Transat's Mot. for Summ. J. ("Air Transat Mem."), Dkt. Entry No. 29.)  Defendants contend that Plaintiff's state law claims are preempted by the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force November 4, 2003), *reprinted in* S. Treaty Doc. 106-45, available at 1999 WL 33292734 (the "Montreal Convention") and that Plaintiff cannot establish a cause of action under the Montreal Convention.  (*See generally* Brady Mem.; Air Transat Mem.)  Plaintiff cross-moves for summary judgment, or, alternatively, dismissal of Defendants' motions, arguing that Defendants violated the Montreal Convention.  (*See generally* Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem."), Dkt. Entry No. 33.)  For the reasons set forth below, Defendants' motions for summary judgment are granted and the case is dismissed.

## BACKGROUND

The following facts are undisputed unless otherwise noted.  Plaintiff hired the Brady Defendants to transport four shipments of clothing (the "Shipments") from New York, New York, to Punta Cana, Dominican Republic.  (AirTransat's Rule 56.1 Statement ("AT Stmt.") ¶ 1, Dkt. Entry No. 28.)  The Brady Defendants contacted Air Transat through its general sales agent, Airline Services International, and arranged for carriage of the Shipments from New York to Punta Cana.  (*Id.* ¶ 3.)  Air Transat then transported the Shipments by truck from New York to Canada, where they were flown from either Toronto or Montreal to Punta Cana.  (*Id.* ¶¶ 8-9.)

Plaintiff contends that one shipment (the "Disputed Shipment"), identified by air waybill[3] No. 649-6119-8406, was seized, delayed, and arrived missing pieces. (Pl.'s Mem. at 5.) Defendants assert that the Disputed Shipment was transported by air from Toronto to Punta Cana and timely arrived at its destination on February 17, 2011. (AT Stmt. ¶ 9.)

## DISCUSSION

**A.    Preemption**

Successor to the Warsaw Convention,[4] the Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention, Art. 1(1). "[*I*]*nternational carriage* means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated . . . within the territories of two States Parties." *Id.*, Art. 1(2) (emphasis in original).

The Montreal Convention's primary goal is to "limit airline accident liability while protecting the rights of passengers and shippers utilizing international air carriage." *Seagate Logistics, Inc. v. Angel Kiss, Inc.*, 699 F. Supp. 2d 499, 505 (E.D.N.Y. 2010). To that end, the Montreal Convention preempts state and federal claims that fall within its scope. *See Best v. BWIA West Indies Airways Ltd.*, 581 F. Supp. 2d 359, 362 (E.D.N.Y. 2008) ("By its own terms, the treaty, where applicable, preempts the remedies of a signatory's domestic law, whether or not the application of the [Montreal] Convention will result in recovery in a particular case.") (citing

---

[3]    An air waybill "expresses an agreement of the parties" in the carriage of cargo by air. *See Fujitsu Ltd. v. Fed. Express Corp.*, 76 F. Supp. 2d 474, 475 (S.D.N.Y. 1999). An air waybill contains information regarding departure and arrival destinations, and agreed stopping places. *See id.*; *see also* Montreal Convention, Art. 4-11.

[4]    It is important to note that, although the Montreal Convention "unifie[d] and replace[d] the system of liability that derives" from the Warsaw Convention, many provisions of the conventions are similar, and courts continue to evaluate provisions of the Montreal Convention using "cases interpreting equivalent provisions in the Warsaw Convention." *Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 205 (E.D.N.Y. 2012) (internal citations omitted).

3

*El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999)); *see also Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004), *aff'd*, 194 F. App'x 5 (2d Cir. 2006). As such, claims brought "in contract or in tort or otherwise" are subject to the Convention's "conditions and . . . limits of liability." Montreal Convention, Art. 29.

The Montreal Convention's scope encompasses: "(1) death or bodily injury suffered by an airline passenger or the destruction, loss of or damage to [his or] her baggage, provided the harm occurred onboard or in the process of embarking or disembarking (Article 17); (2) loss or destruction of baggage or other cargo sustained during carriage by air, subject to certain exclusions (Article 18); and (3) delay in the carriage of passengers, baggage or cargo (Article 19)." *Seagate*, 699 F. Supp. 2d at 505-06.

Turning to the instant action, Plaintiff's amended complaint alleges that Defendants' handling of the Disputed Shipment violated New York State law. (*See generally* Am. Compl.) However, in his opposition to Defendants' summary judgment motion, Plaintiff asserted, for the first time, that Defendants violated the Montreal Convention. (*See* Pl. Mem. at 1-2.) Notably, the parties do not dispute that their contract was for international carriage, which falls squarely within the language of the Montreal Convention. Plaintiff cannot circumvent the Montreal Convention by asserting claims under state law. *See* Montreal Convention, Art. 29; *see also Fields v. BWIA Int'l Airways Ltd.*, 2000 WL 1091129, at *4 (E.D.N.Y. July 7, 2000) (stating that a plaintiff may not circumvent the Montreal Convention by "recharacterizing [his or] her claims as sounding in state law"). Accordingly, Plaintiff's state law claims are dismissed with prejudice. *See Dogbe v. Delta Air Lines, Inc.*, 969 F. Supp. 2d 261, 274-75 (E.D.N.Y. 2013) (dismissing common law contract and tort claims that fell within the Montreal Convention's language).

Moreover, the Court must construe the amended compliant as asserting claims under the Montreal Convention, rather than state law, as pleaded, because Plaintiff's claims fall within the "complete preemption" corollary to the well-pleaded complaint rule. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). The complete preemption doctrine applies when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (citation omitted). As a treaty of the United States, the Montreal Convention's preemptive force is extraordinary. *See Mateo v. JetBlue Airways Corp.*, 847 F. Supp. 2d 383, 386 (E.D.N.Y. 2012) (finding that plaintiff's claims, sounding in state law, against airline employee arose under the Montreal Convention pursuant to the complete preemption doctrine). Accordingly, the Court construes Plaintiff's *pro se* complaint liberally to raise claims under the Montreal Convention.

**B.    Summary Judgment**

   **1.    Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To determine

whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F. 3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F. 2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-

6

moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F. 3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

Local Civil Rule 56.1 requires that a party moving for summary judgment include with the motion a "separate, short, and concise statement of the material facts to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). "When a party has moved for summary judgment . . . and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F. 2d 149, 154 (2d Cir. 1992). In cases involving a *pro se* litigant, Local Civil Rule 56.2 requires that: "[a]ny represented party moving for summary judgment against a party proceeding pro se shall serve and file as a separate document, together with the papers in support of the motion, a 'Notice to Pro Se Litigant Opposing Motion for Summary Judgment' in the form indicated below." Local Civ. R. 56.2. "The notice referred to in the rule advises the pro se litigant of the possibility that the complaint may be dismissed and informs the litigant that she must submit evidence countering the facts asserted by the defendant and raising issues of fact for trial." *Arum v. Miller*, 304 F. Supp. 2d 344, 349 (E.D.N.Y. 2003).

In the instant case, both Defendants submitted Rule 56.1 statements and Rule 56.2 notices. Plaintiff filed a Memorandum of Law and an Affidavit in Opposition to Defendants' statements. Thus, the motions are properly before this Court.

### 2. Application

Defendants move for summary judgment, contending that Plaintiff cannot establish a claim under the Montreal Convention. (*See* Brady Mem. at 6-9; Air Transat Mem. at 8-18.) Plaintiff cross-moves for summary judgment, or, alternatively, dismissal of Defendants' motions,

contending that Defendants violated the Montreal Convention because the Disputed Shipment was "delayed, [and] pieces were missing." (Pl.'s Mem. at 7; *see also* Plaintiff's Letter dated April 21, 2013 at 2 ("Pl.'s Letter"), Dkt. Entry No. 23.)

      a.      **Article 18 Claim**

Plaintiff claims that the Disputed Shipment is missing items. (Pl.'s Letter at 2.) The Court construes this allegation as asserting a claim under Article 18 of the Montreal Convention. Article 18 states that a "carrier is liable for damage sustained in the event of the destruction or loss of or damage to[] cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air." Montreal Convention, Art. 18. For purposes of Article 18, the period of carriage by air does not extend to transport outside an airport. *Id.* However, if the outside carriage was conducted as part of a transport contract, the Convention presumes that damage or loss occurred during the carriage by air. *Id.*

Defendants assert that the Shipments arrived at their destination intact. (*See* AT Stmt. ¶ 10-11; Brady Defendants' Rule 56.1 Statement ("Brady Stmt.") ¶ 12.) Beyond conclusory allegations, Plaintiff has not offered any evidence raising a genuine issue of fact. Notably, Plaintiff's Affidavit in Opposition to Defendants' Motions for Summary Judgment did not contradict the factual allegations contained in Defendants' Rule 56.1 statements. (*See* Pl.'s Affidavit/Affirmation in Opp'n to Defs.' Mot. ("Pl.'s Aff."), Dkt. Entry No. 34.) Plaintiff relies primarily on self-produced invoices to show that the Disputed Shipment is missing items; however, the invoices make no explicit reference to the Disputed Shipment or the Dominican Republic. (*See* Dec. of Andrew J. Harakas in Supp. of Air Transat's Mot. for Sum. J. ("Harakas Dec.") at Ex. C, Dkt. Entry No. 30.) Indeed, most of the invoices are blank. (*Id.*) Based on the

evidence before the Court, it is undisputed that the Shipments arrived at their destination intact. Plaintiff, therefore, has not established a claim under Article 18.

  b.  **Article 19 Claim**

Plaintiff claims that the Disputed Shipment was delayed. (Pl.'s Letter at 2.) The Court construes this allegation as asserting a claim under Article 19 of the Montreal Convention. Article 19 states that "[t]he carrier is liable for damage occasioned by delay in the carriage by air of . . . baggage or cargo." Montreal Convention, Art. 19.

Defendants assert that the Shipments arrived as scheduled and that Plaintiff caused the delay by refusing to pay the customs duties for the Shipments upon arrival in the Dominican Republic. (AT Stmt. ¶ 10; Brady Stmt. ¶ 12.) Plaintiff has not produced any evidence to dispute this assertion, nor has he produced any evidence of the alleged delay. Plaintiff contends that an Air Transat invoice, which documents the Disputed Shipment's movement from New York to Canada, is strong evidence that the Disputed Shipment was delayed. (Pl.'s Mem. at 6.) Although the invoice has a printed date of February 15, 2011, there appears to be a stamped date on the invoice, which reads, "SWISSFORT CARGO YYZ FEB 16 13." (Harakas Aff. at Ex. I.) Plaintiff claims that this date represents the date when the Disputed Shipment arrived in Toronto for shipment to Punta Cana. (Pl.'s Mem. at 6.) However, Plaintiff has not produced any evidence to substantiate his interpretation of the stamped date, nor has he produced any evidence to show Defendants caused the alleged delay. As such, there is no evidence in support of Plaintiff's allegations of delay. Thus, Plaintiff has not established a claim under Article 19 of the Montreal Convention.

### c. Article 50 Claim

Plaintiff argues that Defendants violated Article 50 of the Montreal Convention by failing to maintain adequate insurance. (Pl.'s Mem. at 8.) Defendants assert that they maintained all required insurance and that Plaintiff has misinterpreted Article 50. (AirTransat Repl. Mem. at 8-9.) Article 50 states that signatories to the Montreal Convention "shall require their carriers to maintain adequate insurance covering their liability under this Convention." Montreal Convention, Art. 50. There is no case law or language in the Montreal Convention to suggest that Plaintiff has standing to pursue a claim under Article 50. Moreover, Plaintiff has not produced any evidence to substantiate his claims. As such, Plaintiff's claim under Article 50 is dismissed.

### d. Plaintiff's Miscellaneous Claims

Plaintiff claims Defendants violated unspecified U.S. Census Bureau regulations and U.S. export law. Notably, the Montreal Convention preempts all claims that fall within its scope, including claims under federal law. *See Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 494-95 (S.D.N.Y. 2009) (citing *King v. American Airlines, Inc.*, 284 F. 3d 352, 358 (2d Cir. 2002) (finding that discrimination claims brought under federal law were preempted by the Warsaw Convention)). Accordingly, Plaintiff's unspecified claims arising under federal law are preempted by the Montreal Convention and dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment are granted, Plaintiff's motion for summary judgment or dismissal of defendant's motion is denied. Accordingly, this action is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      September 8, 2014

                                              _____/s/_____
                                                  DORA L. IRIZARRY
                                          United States District Judge